**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

C<small>LARENCE</small> H. B<small>ROWN</small>,

       Defendant/Petitioner,

v.                                 Case No. 05-80101

U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>,        Honorable Arthur J. Tarnow
                                               Senior United States District Judge

       Plaintiff/Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE [85],**

**TERMINATING PETITIONER'S MOTION FOR LEAVE TO REQUEST DISCOVERY [92] AS MOOT,**

**AND**

**TERMINATING PETITIONER'S MOTION TO COMPEL [119] AS MOOT.**

### I. INTRODUCTION

Before the Court is Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [85] which was filed on July 30, 2008. The government filed a response [97]. Petitioner filed a reply [117].

Petitioner also filed two motions related to his § 2255 motion: a Motion for Leave to Request Discovery [92] and a Motion to Compel the Court to order a Magistrate Judge's Report and Recommendation [119]. All filings relate to the underlying criminal case, 05-80101, and will be addressed below. For the following reasons, the Court DENIES the Motion to Vacate

1

Sentence and finds that there is no need for a hearing on the matters. The Court also terminates the Motion for Leave to Request Discovery and the Motion to Compel as MOOT.

## II. BACKGROUND

Petitioner was convicted of kidnaping; transportation of a minor with the intent to engage in criminal sexual activity; and sex trafficking of children or by force, fraud, or coercion. He was sentenced to twenty-five years of imprisonment.[1] His conviction and sentence were affirmed by the Sixth Circuit. *United States v. Clarence Howard Brown*, 498 F.3d 523 (6th Cir. 2007), *cert. denied*, 552 U.S. 1050 (2007). Petitioner's 28 U.S.C. § 2255 motions raise the claim that his Sixth Amendment right to the effective assistance of counsel was violated with respect to his trial and his appeal.

## III. DISCUSSION

**A. Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [85] .**

Section 2255 of Title 28 U.S.C. provides that "a prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . or is otherwise subject to collateral attack" may move to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255 (2006). The court may provide a remedy if there is a finding that there has been "such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.*

In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-part standard required by *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant

---

[1]Petitioner was sentenced to twenty years for Count One and Count Three, with both sentences running concurrently. He was sentenced to five years for Count Two to run consecutively to Counts One and Three.

> makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. As to the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Further, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment" or "sound trial strategy." *Id.* at 689. As to the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. More than speculative assertions are required. *Bowen v. Foltz*, 763 F.2d 191 (6th Cir. 1985).

### 1. Sentence Exposure

Petitioner argues that his constitutional right to effective assistance of counsel was violated because he was not adequately advised of his possible sentence exposure by trial counsel. Petitioner argues that he would have taken the plea agreement if he had knowledge of the sentence exposure.

He claims that trial counsel advised him that the plea agreement would carry a sentence of between 12.5 to 14.5 years.[2] Pet'r's Reply, App. B, Aff. of Francisco Saldana. He claims he was told that going to trial would expose him to a maximum of twenty years imprisonment, without mention of possible consecutive sentencing. Pet'r's Mot. to Vacate 5 [hereinafter Pet'r's Mot.]. Petitioner also claims that trial counsel advised him that his chance of acquittal was

---

[2]In Petitioner's Motion [85], it states that he was advised that the sentence was seventeen years for the plea agreement. This typographical error was corrected, however, in his Reply brief [117].

3

higher than being convicted. *Id.* Petitioner's claims are without merit.

Here, Petitioner was repeatedly notified of the possible sentence exposure. First, Petitioner signed an Acknowledgment of Indictment on February 3, 2005. Res't's Resp., Ex. 1 [hereinafter Resp.]. By signing the form, Petitioner acknowledged that he was aware that a conviction on Count One would expose him to "[n]ot less than 20 years to life . . . ." and that a conviction on Count Two would expose him to "[n]ot less than 5 years and not more than 30 years . . . ." *Id.* Petitioner further confirmed his understanding of the sentence exposure during his arraignment before Magistrate Judge Mona K. Majzoub on February 3, 2005. Resp., Ex. 6, at 3-4. At the arraignment, Magistrate Judge Majzoub asked Petitioner if he had the opportunity to review the Acknowledgment of Indictment, whether he understood the charges, and whether he understood the maximum sentence allowed on each count. *Id.*

Second, trial counsel, Mr. Robiner, states that he fully advised Petitioner of the possible sentence he would face if convicted. Resp., Ex. 7, at 2. In his affidavit, Mr. Robiner states that he "discussed in great detail the Government's Rule 11 Plea Offer" and "the risk of proceeding to trial and the possible penalties that could occur if convicted." *Id.* Mr. Robiner's statements in his affidavit are supported by the Court record, as Respondent correctly argues. Prior to trial, Mr. Robiner stated the same to the Court:

| The Court: | Mr. Brown, one last thing I want to tell you. The arraignment is done. I want to make sure you understand that -- Well, let me ask this. Has there been a Rule 11 Agreement offered, Ms. Ison? |
|---|---|
| Ms. Ison: | Yes, Your Honor. |
| The Court: | Mr. Robiner-- |

> Mr. Robiner: That's correct, Your Honor.
>
> The Court: --have you explained that to your client?
>
> Mr. Robiner: We have gone over it in detail, Your Honor.
>
> The Court: And, Mr. Brown, do you understand that you could get more time without the Rule 11 Agreement?
> Do you understand that?
>
> Mr. Brown: Right.
>
> The Court: And you are ready to go to trial?
>
> Mr. Brown: Yes.

Resp., Ex. 2, at 11-12. Trial counsel further confirmed his understanding of the sentence exposure Petitioner was facing at Petitioner's sentencing. *See* Sentencing Tr. vol. 5, at 8, April 3, 2006. The full colloquy goes as follows:

> Mr. Robiner: Yes, Your Honor. I believe that the guidelines have a maximum of 20 years.
>
> The Court: No. That's Count 1 and Count 3.
>
> Mr. Robiner: Right.
>
> The Court: Count 2 has a maximum of 15 years.
>
> Mr. Robiner: 15. And 1 has 20, Your Honor.
>
> The Court: I understand. But they can be consecutive.
>
> Mr. Robiner: That's possible. I would only say –
>
> The Court: It's more than possible.

*Id.* at 8.

Considering the facts, Petitioner was well aware of the possibility that even a conviction could have resulted in more than twenty years of imprisonment. Petitioner knew the potential consequences he was facing. There is no indication that trial counsel was ineffective in raising the issue to Petitioner's attention.

## 2. Suppression of Statements

Petitioner argues that his trial counsel was ineffective for failing to file a motion to suppress for an alleged violation of his Fifth and Sixth Amendment rights. Pet'r's Mot. at 12. He claims trial counsel did not "familiarize" himself with incriminating statements Petitioner made during an interrogation. *Id.* Petitioner did not have counsel present during the interrogation and that his request for counsel was ignored. He further claims that he did not waive his *Miranda* rights. He argues that trial counsel should have discussed the statements with him and then filed a motion to suppress the statements. *Id.* at 12-17.

Petitioner's argument fails. First, Petitioner has not met the burden of showing that his trial counsel was deficient with respect to this issue. There is no showing that the statements he made in the interrogation were incriminating. The FBI report states that Petitioner denied the allegations against him. Resp., Ex. 8, at 1-2. The only thing that might have been considered damaging is that Petitioner confirmed was that he may have known the complaining witness and may have traveled with her at some point. *Id.* at 1. It did not , however, establish that Petitioner was with her at the time of the offenses. *See id.*

Petitioner has not shown that trial counsel was deficient for not inquiring more as to these statements, for failing to file a motion for suppression, or that his action or inaction fell below

the objective standards of reasonableness. *See Strickland*, 466 U.S. at 687-88 ("When a convicted defendant complains of the ineffectiveness of counsel's assistance the defendant must show that counsel's representation fell below an objective standard of reasonableness"). Even if trial counsel's representation was insufficient, prejudice has not been shown. Petitioner has not shown a reasonable probability that filing a suppression motion would have resulted in a different outcome of the proceedings.

### 3. Witness Investigations

Petitioner also claims that trial counsel was ineffective for failing to interview and call several witnesses to testify at trial. Pet'r's Mot. at 19-20. Petitioner claims that he gave trial counsel the "names. . ., addresses, and phone numbers [of witnesses] that had knowledge of the events that . . . occurred, and could [have] exculpated him . . . ." *Id.* He argues that trial counsel did not contact the witnesses, which resulted in his failure to call them at trial.[3] *Id.*

Petitioner has provided affidavits from six individuals he would have liked to testify on his behalf: 1) Tara Roberson, 2) Kletha Roberson, 3) Rodney McClenden, 4) Joseph Robinson, 5) Tonya Brown, and 6) Robert Miller. Affs. Docket Entry [87] [hereinafter Affs.]. The affidavits state general information to show that the complaining witness did not seem to be unwilling to travel with Petitioner when they were around and that they were not contacted by Petitioner's trial counsel. *See id.*

---

[3]Trial counsel asserts that the only potential witness Petitioner mentioned was Rodney McClendon. Trial counsel states that he did attempt to contact Rodney McClendon but there was insufficient contact information for him. Resp., Ex. 7, Aff. of Norman Robiner, at 2-3. The difficulty in contacting McClendon is also supported by the information in Respondent's brief. Resp. at 20-21.

Respondent argues that the above named people lack credibility and that the statements in the affidavits do not refute guilt. Resp. at 19. Respondent argues that not investigating the potential witnesses further could have been sound trial strategy. *Id.* at 22-23.

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

*Strickland*, 466 U.S. at 690-91. Here, Petitioner has not shown that counsel was deficient for failing to speak to the named witnesses. The decision not to pursue the witnesses could have been a reasonable one. Further, even if the failure to investigate these witnesses was insufficient, Petitioner has not shown a reasonable probability of a different result had counsel called them as a witness or contacted them. Petitioner's argument fails.

### 4. Jury Pool Composition

Petitioner claims that trial counsel was ineffective for failing "to object and present evidence regarding the r[a]cial imbalance of the . . . jury venire." Pet'r's Mot. at 24. He argues that his Sixth Amendment right to a venire drawn from a fair cross-section of the community was violated because only two African-American women were summoned to participate in his jury pool. *Id.* at 25. He claims that there was a systematic underrepresentation, but provides no evidence to support this claim. *Id.* at 24.

Defendants have a Sixth Amendment right to a jury drawn from a "fair cross section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 526-27 (1975). This does not mean that the petit juries chosen "must mirror the community and reflect various distinctive groups in the population." *Id.* at 538. It means that the

8

source from which petit juries are drawn must be representative of the community. *Id.*

> [T]o establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). The first factor will not be discussed because the parties agree that African Americans are a distinctive group in the community.

As Respondent correctly argues, Petitioner has failed to show a prima facie violation with respect to the second and third factors. Here, Petitioner claims that simply because there were only two African-American women in the petit jury pool that there was a Sixth Amendment violation. He provides no other facts or evidence to support his claim. Thus, he has not shown that trial counsel was deficient for failing to make the objection, nor does he show any prejudice that resulted from the failure to object. Petitioner's claim is without merit.

### 5. Questions from the Jury

Petitioner claims that trial counsel was ineffective for failing to object to the decision to allow jurors questions during the trial. Pet'r's Mot. at 29. Petitioner erroneously characterizes the decision as one made *sua sponte* by the Court. Petitioner argues that questioning should not have been allowed since the case is not a complex one. Pet'r's Rep. at 19. He argues that the Court did not take prophylactic measures when it allowed a follow-up question without conducting a sidebar conference. Pet'r's Mot. at 39. He claims that a curative instruction should have been provided to protect against alleged premature deliberation. *Id.* at 29-30.

The Sixth Circuit addressed this exact issue in *United States v. Collins*, 226 F.3d 457,

9

461-65 (6th Cir. 2000), *cert. denied*, 531 U.S. 1099 (2001). The court may consider factors to determine whether juror questions are appropriate. *See id.* at 461-62. "[A]n absence of complexity should not render juror questioning *per se* reversible error." *Id.* at 463. Ultimately, it is in the court's discretion to allow juror questions. *See id.* at 461-62.

Here, the decision to allow juror questions was made by the parties, not the Court. *See* Trial Tr. vol. 1, at 9, Nov. 8, 2005 ("[Y]ou've agreed to have notes taken by the jury . . ."). The parties confirmed, on the record, that there was an agreement to allow the jurors to take notes and submit questions.

Also, the Court did implement prophylactic measures. During the preliminary instructions the Court explained that no premature deliberation is permitted and explained the question asking process to the jury. Trial Tr. vol. 2, at 13-14, Nov. 9, 2005. The questioning process was appropriate. *See Collins*, 226 F.3d at 464 (upholding an almost identical question asking process implemented by the district court); *see also United States v. Thomas*, 238 F.3d 426 (6th Cir. 2000) (unpublished table decision). The procedure was that to ask a question the juror had to submit the question in writing, the Court conducted a sidebar conference, the Court decided whether it was appropriate, and the attorneys had the opportunity to ask follow-up questions. Trial Tr. vol. 2, at 13-14.

The questions were also proper. Petitioner argues that some of the questioning indicated preliminary deliberation. The Court disagrees. As Respondent correctly argues, most of the questions were clarifying what the witnesses had already stated. Further, at the end of the trial the jury was explicitly instructed on what was evidence and what was not. Trial Tr. vol. 4, at 67-68, Nov. 14, 2005.

Petitioner has failed to show that his trial counsel was deficient for failing to object to the jurors' questions or for failing to request a curative instruction with respect to the juror questioning. Even if counsel were deficient, prejudice has not been shown. The evidence of guilt was overwhelming. Petitioner has not shown that these objections would have created a reasonable probability of a different result.

### 6. Petitioner's Right to Testify

Petitioner claims that his trial counsel was ineffective for allegedly advising him that he could not rescind his waiver of his right to testify at trial. Pet'r's Mot. at 34. The Court disagrees.

A defendant has a constitutional right to testify, which can be waived if the waiver is knowing and voluntary. *Goff v. Bagley*, 601 F.3d 445, 471 (6th Cir. 2010).

> Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record.

*United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000). A defendant who wants to testify against his attorney's recommendation must notify the court "that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand." If the defendant does not notify the court of his disagreement, his wavier of the right to testify is presumed. *Id.*

Here, Petitioner confirmed on the record that he did not wish to testify and that it was his decision not to testify. Trial Tr. vol 3, at 136-37, Nov. 10, 2005. He did so on a Friday. *Id.* He argues that over the weekend he changed his mind and alerted his trial counsel that he wanted to

11

testify. Pet'r's Mot. at 35-36. Petitioner's trial counsel states that "at no time after having waived his right to testify at trial did Mr. Brown advise [him] that he desired to testify on his own behalf." Resp't's Reply, Ex. 7, at 5.

In fact, Respondent correctly raises the point that it was sound trial strategy for Petitioner not to testify as the government was eager to introduce his prior convictions. Resp. at 37. Petitioner has not shown that trial counsel was deficient, nor has he shown prejudice.

### 7. Prosecutorial Misconduct

Petitioner also argues that his trial counsel was ineffective for failing to object to statements made by the prosecutor during closing arguments. Pet'r's Mot. at 50. There are four comments with which Petitioner takes issue: 1) a comment about a six year old boy engaging in adult-like behavior; 2) a reference to Petitioner's own statement which corroborated the complaining witness' story; 3) a reference to Petitioner's denial; and 4) a comment referring to Petitioner's closing argument as an "act of desperation." *Id.* at 51-52. The Court finds that the first comment regarding the six year old was improper, although a reversal of the conviction is not warranted. The other comments were not improper.

In reviewing a claim of prosecutorial misconduct, the Sixth Circuit conducts a two-step inquiry: 1) whether the prosecutor's remarks and conduct were improper, and 2) whether the conduct was flagrant, warranting reversal. *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 2005)).

To determine impropriety, the court "view[s] the conduct at issue within the context of the trial as a whole." *Id.* at 522-23 (quoting *United States v. Beverly*, 369 F.3d 516, 543 (6th Cir. 2005)). The court also considers whether and to what extent defense counsel's statements

12

invited a prosecutor's improper argument. *Id.* at 523 (quoting *United States v. Jacobs*, 244 F.3d 503, 508 (6th Cir. 2005)). The court considers four factors to assess the flagrancy of an improper comment:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Girts v. Yanai*, 501 F.3d 743, 759 (6th Cir. 2007) (internal citations omitted).

To reverse a conviction because of an improper statement that is not flagrant, the court must determine that:

> 1) the proof of the defendant's guilt is not overwhelming; 2) the defense counsel objected; and 3) the trial court failed to cure the impropriety by failing to admonish the jury.

*Francis*, 170 F.3d at 550.

During closing argument the prosecutor stated " . . . a little six year old boy, who also you wouldn't be surprised if he engaged in any adult-like behavior." Trial Tr. vol 4, 25-26. This statement was improper. Respondent argues that it was meant to refer to the boy's observation of inappropriate behavior. However, it is uncertain whether the jury would infer that meaning from the statement. The statement seems to suggest that the child was involved in the adult-like behavior. Since this case revolved around rape and prostitution, it was especially misleading here. The charges did not relate to the boy, and there was no evidence presented to suggest that he would be affected by what he witnessed. . However, the boy's observation was part of the *res gestae*.

Even though the statement was improper, it did not rise to the level of being flagrant. The statement was isolated. It is unclear what Respondent's intent was in making the comment.

13

There was overwhelming evidence against Petitioner. The improper statement does not warrant a reversal of the conviction. The Court finds that the improper comment was harmless considering the evidence of guilt.

The three other statements Petitioner identifies were not improper. The second statement regarding Brown's own statement corroborating Tiffany's story is proper. Petitioner argues that the statement led the jurors to infer that he should have testified about his statement. The Court disagrees. Respondent was appropriately referring to Petitioner's statement that was admitted as evidence, not his failure to testify.

Petitioner argues that the third statement also violated his Fifth Amendment rights. The third statement was

> [b]ut, again, the law protects Tiffany from pimps and panders and predators. That's what Mr. Brown did to Tiffany Bender. Tiffany's story tells you that. And, in fact, [Mr. Brown's] denials tell you that.

Trial Tr. vol. 4, 28. This statement is so ambiguous that it is hard to determine what the jury could have inferred from it or how it harmed Petitioner. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974) (finding that when an ambiguous statement made during a final argument has more than one interpretation, the court should not adopt the interpretation that "casts doubt upon the prosecutor's intentions").

Finally, the fourth statement was proper. Respondent stated that Petitioner referenced facts in his closing argument that were not in evidence, so this was "an act of desperation." Trial Tr. vol. 4, at 55. This argument is proper because no juror could possibly infer that the comment was related to Petitioner's failure to testify. Rebuttal statements in response to a defendant's closing argument do not constitute prosecutorial misconduct. *United States v. Robinson*, 244

14

F.3d 503, 508 (6th Cir. 2001). This statement was a rebuttal to Petitioner's closing argument and a proper comment on his trial strategy.

Because the one improper comment made was not flagrant, a hearing on this issue is not needed. The strength of the evidence was enough that even without the improper comment, Petitioner would have been found guilty by the jury. The other alleged improper comments are too ambiguous to decide that a jury would infer the same meaning from them that Petitioner has.

### 8. Cumulative Errors

Petitioner argues that the totality of his trial counsel's errors produced a trial setting that was fundamentally unfair. Pet'r's Mot. to Vacate 56. He asserts that even if none of the errors considered alone amount to a deprivation of due process, then considered cumulatively the errors created an unfair trial. *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000) (quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983). Here, like in *Hernandez*, "the trial might not have been perfect, but overall the procedures withstand his due process challenge." *Id.*

### 9. Appellate Counsel

Petitioner claims that his appellate counsel was also ineffective. *See* Pet'r's Mot. All of the above arguments are repeated with respect to Petitioner's appellate counsel. Petitioner argues that appellate counsel was ineffective for not bringing the ineffective assistance of counsel claims on direct appeal. *See id.*

"As a general rule, this court will not review claims of ineffective counsel that are raised for the first time on appeal. These claims are best brought by a defendant in a post-conviction

proceeding under 28 U.S.C. § 2255 . . . ." *United States v. Meeker*, 411 F.3d 736, 748-49 (6th Cir. 2005) (quoting *United States v. Thomas*, 74 F.3d 701, 715 (6th Cir. 1996)). "This rule is in place because ineffective-assistance claims require a finding of prejudice, a factual issue that appellate courts are not properly equipped to resolve." *United States v. Aaron*, 590 F.3d 405, 410 (6th Cir. 2009) (citing *United States v. Franco*, 484 F.3d 347, 355 (6th Cir. 2007)).

Here, Petitioner has not shown that appellate counsel was deficient for failing to bring ineffective assistance of counsel claims against Petitioner's trial counsel. Furthermore, an affidavit from Petitioner's appellate counsel, Chokwe Lumumba, states that he was solely retained to handle the direct appeal. Resp., Ex. 12. Petitioner's claim fails.

### B. Petitioner's Request for a Hearing

Petitioner requests a hearing on his § 2255 motion. *See* Pet'r's Mot. A hearing is not required when the "files and records of the case conclusively show that the prisoner is entitle to no relief . . . ." *See* 28 U.S.C. § 2255(b). It is true that the burden on a *habeas* petitioner is relatively light, as Petitioner argues. *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). No hearing is required, however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (internal citations omitted)). There is no need for an evidentiary hearing for the reasons stated above.

## V. CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED that Petitioner's Motion to Vacate Sentence [85] is DENIED.

IT IS FURTHER ORDERED that Petitioner's Motion for Leave to Request Discovery [92] is TERMINATED AS MOOT.

IT IS FURTHER ORDERED that Petitioner's Motion to Compel [119] is TERMINATED AS MOOT.

IT IS SO ORDERED

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated:  November 30, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2010, by electronic and/or ordinary mail.

s/Felicia Moses for /Lisa Ware

Case Manager