UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CLARENCE HOWARD BROWN,

    Defendant.

_____/

Criminal Case No. 05-80101

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**OPINION AND ORDER GRANTING CLARENCE HOWARD BROWN'S MOTION FOR COMPASSIONATE RELEASE [134]**

On November 14, 2005, defendant-petitioner, Clarence Howard Brown, was convicted by a jury of kidnapping, in violation of 18 U.S.C. § 1201(a) and (g), transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a), and sex trafficking of children or by force, fraud, or coercion, in violation of 18 U.S.C. § 1591. (ECF No. 41). On April 11, 2006, the Court sentenced Brown to 300 months imprisonment. (ECF No. 52, PageID.189).

On August 27, 2020, Brown moved for compassionate release and appointment of counsel. (ECF No. 134; ECF No. 131). The Court appointed the Federal Community Defender to represent Brown and ordered Brown and the

Government to file supplemental briefing. (ECF No. 132). The Court held a hearing on Brown's Motion [134] on September 21, 2020. (*Id.*).

For the reasons stated on the record and below, Brown's Motion [134] is **GRANTED**, and his sentence is reduced to time served.

## BACKGROUND

Brown was born in Scotts, Mississippi in 1973, where he lived until moving to Michigan in 1988. (PSR ¶¶ 86, 94). In 1990, Brown moved to Ohio, where he lived for several years and had children. (PSR ¶¶ 89-91, 94). Brown moved back to Michigan in 1997. (PSR ¶ 94). While in prison, Brown has maintained close relationships with several family members including his mother, several half-siblings, two aunts, several cousins, and other members of his extended family. (ECF No. 138, PageID.1852).

Brown dropped out of high school in the eleventh grade so that he could find work. (PSR ¶ 102). In the mid-1990s, however, Brown injured his back and had to quit his job as a gardener. (PSR ¶ 105). He received disability benefits for this injury from 1998 until his arrest in 2005. (PSR ¶ 104).

Brown was convicted of several charges in the 1990s and early 2000s. The most serious of these appears to be an aggravated assault charge from 1992, for which Brown served one year in prison, and an attempted aggravated drug

trafficking charge in 1993, for which Brown served eighteen months in prison. (PSR ¶¶ 57, 61).

Brown's current offense involved the kidnapping and prostitution of TB, the girlfriend of Brown's cousin, Mack Adkins. (PSR ¶ 12). TB travelled to Ohio with Adkins on November 9, 2001. (*Id.*). Instead of seeing a movie as they planned, Adkins took TB to visit several acquaintances and they spent the night. (*Id.*). Adkins promised to take TB home the next day, but instead, took her to visit other acquaintances, including Brown and his girlfriend, Holly Hillis. (PSR ¶¶ 13-15). Eventually, Adkins told TB they were going to Pennsylvania with Brown and Hollis. (PSR ¶ 16).

Over the next several days, Adkins and TB travelled with Brown and Hollis, first in Pennsylvania, and then back in Michigan, while Hollis performed acts of prostitution. (PSR ¶¶ 17-20). Eventually, Adkins departed, leaving TB with Brown and Hollis. (PSR ¶ 17). Brown drove Hollis and TB to Indiana, where he forced TB to have sex with him and instructed TB to learn how to prostitute from Hollis. (PSR ¶¶ 22-23). Brown and Hollis coerced TB to perform acts of prostitution at a truck stop over the next several days. (PSR ¶ 26). TB eventually received a ride home from a female truck driver on November 27, 2001. (PSR ¶ 27). TB identified Brown and Hollis three months later. (PSR ¶ 28).

Notably, though TB has some reservations about Brown's release, she does not oppose it. (ECF No. 137-11, PageID.1842). Instead, she requests that if the Court orders release, it impose conditions such as a period of electronic monitoring and forbidding Brown from attempting to contact her or her family. (*Id.*).

Brown is currently forty-seven years-old, incarcerated at FCI Edgefield, and scheduled for release on October 3, 2026. *Find an Inmate*, FED. BUREAU PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register No. 39279-039) (last visited September 18, 2020).

## ANALYSIS

Section 3582(c)(1) of Title 18 of the U.S. Code, colloquially known as the compassionate release statue, provides, in relevant part:

> **(A)** [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> **(i)** extraordinary and compelling reasons warrant such a reduction.
> [. . .]
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1).

A. Exhaustion

Before a petitioner moves for compassionate release under 18 U.S.C. § 3582(c)(1), they must either exhaust their administrative remedies with the BOP or wait thirty days from when they filed a request with their warden. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). On April 15, 2020, Brown filed an administrative request for compassionate release to the Warden of FCI Edgefield. (ECF No. 137-3, PageID.1830). The Government concedes that Brown has exhausted his administrative remedies. (ECF No. 136, PageID.1551).

"The Court now has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether [Brown] poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors." *Crider v. United States*, No. 01-81028-1, 2020 U.S. Dist. LEXIS 133233, at *4 (E.D. Mich. July 28, 2020).

B. Extraordinary and Compelling Reasons for Release

In order to ascertain whether there are extraordinary and compelling reasons to release Brown, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Application Notes to the relevant policy statement provide the following:

> **1. Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>> **(A) Medical Condition of the Defendant.—**
>>> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>> **(ii)** The defendant is—
>>>> **(I)** suffering from a serious physical or medical condition,
>>>> **(II)** suffering from a serious functional or cognitive impairment, or
>>>> **(III)** experiencing deteriorating physical or mental health because of the aging process,
>>>
>>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> [. . .]
>
>> **(D) Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13. Here, Brown has presented "Other Reasons" in combination with "Medical Condition[s]" to warrant compassionate release.

There are currently two confirmed cases of COVID-19 among inmates at FCI Edgefield and seventeen confirmed cases among staff. *See COVID-19 Coronavirus*, FED. BUREAU PRISONS, https://www.bop.gov/coronavirus/ [https://perma.cc/YYD7-DMZT] (last updated Sept. 25, 2020). Ninety-two inmates and nine staff members

are listed as having recovered. *Id.* On September 23, 2020, a forty-eight-year-old inmate died. *Inmate Death at FCI Edgefield*, FED. BUREAU PRISONS (Sept. 25, 2020), https://www.bop.gov/resources/news/pdfs/220200926_press_release_johnson.pdf [https://perma.cc/CP5J-JQHE]. According to the BOP, he had tested positive for COVID-19 but was released back into the general population after only eleven days of isolation due to his lack of symptoms. *Id.* Consequently, it is unclear to the Court how many of the inmates and staff the BOP has marked "recovered" are merely asymptomatic.

Brown's risk of death or serious illness from COVID-19 due to the poorly managed situation at FCI Edgefield is exacerbated by his medical conditions: He suffers from Type II diabetes, hyperlipidemia, and hypertension. (ECF No. 137-2, PageID.1813). Indeed, the Government concedes that "Brown's heightened risk form [sic] Covid-19 based on his Type 2 diabetes qualifies as an 'extraordinary and compelling reason[]' for release." (ECF No. 136, PageID.1539; ECF No. 141, PageID.1919-20).

C. Dangerousness

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Although the Government concedes that there are extraordinary and compelling reasons for compassionate

release, it argues, citing Brown's criminal history and record in prison, that Brown is ineligible because he remains a danger to the community.

The Government is correct that Brown's record reflects several criminal convictions prior to the instant case, some of which involved violence. (ECF No. 136, PageID.1558). The Government is also correct that Brown has received sporadic disciplinary infractions while in federal custody, one of which involved violence. (ECF No. 137-3, PageID.1838-39). Nevertheless, Brown's overall record in prison, encompassing not only his disciplinary history but also his education and program participation, combined with the overwhelming support he will have from his family if released, persuades the Court that he will not pose a danger.

Brown's record prior to the instant offense was lengthy, however, the majority of his convictions were for nonviolent conduct such as driving with a suspended license, resisting arrest, or receiving stolen property. (PSR ¶ 55, 57, 59, 63, 65, 67). Moreover, most of these took place while Brown was in his early twenties. (*Id.*). In fact, since 1997, Brown's record reflects only one conviction other than his federal case. (PSR ¶ 71).

Brown has been incarcerated at this point for over fifteen years, a period during which he has had substantial opportunity to reform. Indeed, while incarcerated, he has earned his GED and completed more than 1,300 hours of programming, including life skills courses, job certification courses, and general

educational courses like Spanish and Business Math. (ECF No. 138-2, PageID.1859). Moreover, the fact that Brown undertook many of these educational programs even though he had already earned his GED in 2007 demonstrates a genuine desire to improve himself. (*Id.*). While earning his GED, Brown even received the accolade of "Most Improved Student." (ECF No. 138-2, PageID.1965). Brown's rehabilitation is further evidenced by his success as a section leader in the BOP's Army Fatigue sewing department and his recommitment to faith while in prison. (ECF No. 134, PageID.1526).

Brown has had four disciplinary incidents while in custody, the most recent of which, in 2017, involved a fight. (ECF No. 137-9, PageID.1838-39). Brown's other incidents, none of which involved violence, were for being out of place (2006) and possessing contraband (2011 and 2015). (*Id.*). Although the violent infraction is also Brown's most recent, the Court credits Brown's testimony at the hearing that he did not start the fight. (ECF No. 141, PageID.1922-23). Moreover, the Court notes that the incident took place more than three years ago and, in general, appears to be an outlier in Brown's fifteen plus years of incarceration. Consequently, the Court declines to find Brown dangerous on account of his disciplinary record.

Finally, the Court finds that Brown has an extensive network of family members determined to support him on release. Brown's mother, three of his half-siblings, three of his aunts, three of his nieces, one of his nephews, and one of his

cousins all wrote to the Court on Brown's behalf, attesting to the extent of his rehabilitation and the positive influence he has had on their lives. (ECF No. 138-5). The Court is impressed by this support network and, accordingly, finds that Brown will not pose a danger upon release.

<u>Section 3553(a) Factors</u>

The last step a district court contemplating a motion for compassionate release must take is to consider the sentencing factors provided by 18 U.S.C. § 3553(a). Those are as follows:

> **(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
>   **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   **(B)** to afford adequate deterrence to criminal conduct;
>   **(C)** to protect the public from further crimes of the defendant; and
>   **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for—
>   **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>   [. . .]

>    **(5)** any pertinent policy statement—
>    [. . .]
>    **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>    **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)

The Court's consideration of these factors is demonstrated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the September 21, 2020 hearing. Brown's record and the nature and circumstances of his offense made it clear to the Court that he was dangerous at the time of sentencing. Fifteen years of incarceration, however, have given him substantial opportunity to rehabilitate. Brown's accomplishments while incarcerated, combined with his contrition at the hearing demonstrate to the Court that he has taken that opportunity seriously. Moreover, the lengthy period of time Brown has already spent in custody—many years longer his co-defendant—adequately reflects the seriousness of his offense, provides just punishment, and promotes respect for the law. In terms of deterrence, the Court credits Brown's testimony that he has learned his lesson and finds that others will be deterred by the fact the Brown was caught and spent more than fifteen years in custody. Accordingly, a sentence reduction to time served is consistent with the § 3553(a) factors.

## CONCLUSION

**IT IS ORDERED** that Brown's Motion for Compassionate Release [134] is **GRANTED** and that his sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Brown be **IMMEDIATELY RELEASED** to the Northern District of Mississippi to begin his three-year term of **SUPERVISED RELEASE**, as outlined by the April 11, 2006 Judgment (ECF No. 52, PageID.190), including the following Special Conditions:

> **The defendant shall undergo a strict fourteen-day quarantine upon release and shall fully comply with any applicable state or local stay-at-home orders, social distancing guidelines, or other public health restrictions.**
>
> **The defendant must comply with the requirements of the Sex Offender Registration and Notification Act, 34 U.S.C. § 20901, as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where the defendant resides, works, is a student, or was convicted of a qualifying offense.**
>
> **The defendant shall participate in the Location Monitoring Program for 270 consecutive days and shall abide by all the requirements of that program. The defendant is restricted to his residence at all times, with the exception of employment, education, religious services, medical treatment (including mental health, substance abuse, and appointments for family members), attorney visits, court appearances, court-ordered obligations, and other activities as approved in advance by the probation officer. Technology at the discretion of the probation office. The Court waives the cost of the program.**
>
> **The defendant shall make no attempt to locate or communicate with the victim, TB, directly or through a third party.**
>
> **As deemed necessary, the defendant shall participate in a mental health treatment program and follow the rules and regulations of**

that program. The probation officer in consultation with the treatment provider will supervise the defendant's participation in that program (provider, location, modality, duration, intensity, etc.).

**SO ORDERED**.

                                                s/Arthur J. Tarnow
                                                Arthur J. Tarnow
Dated: October 9, 2020         Senior United States District Judge